## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMIL EL-BANNA, *et al.,* ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 04-1144 (RWR) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, *et al.,* ) | |
| ) | |
| Respondents. ) | |
| ) | |
| OMAR DEGHAYES, *et al.,* ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 04-2215 (RMC) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, *et al.,* ) | |
| ) | |
| Respondents. ) | |
| ) | |
| HISHAM SLITI, *et al.,* ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-429 (RJL) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, *et al.,* ) | |
| ) | |
| Respondents. ) | |

|  |  |
|---|---|
| USAMA HASAN ABU KABIR, *et al.,* )<br><br>Petitioners, )<br><br>v. )<br><br>GEORGE W. BUSH,<br>President of the United States, *et al.,* )<br><br>Respondents. ) | Civil Action No. 05-431 (RJL) |

USAMA HASAN ABU KABIR, *et al.,*                    )
                                                   )
                    Petitioners,                   )
                                                   )
        v.                                         )    Civil Action No. 05-431 (RJL)
                                                   )
GEORGE W. BUSH,                                    )
President of the United States, *et al.,*           )
                                                   )
                    Respondents.                   )
_____ )

AHAMED ABDUL AZIZ, *et al.,*                        )
                                                   )
                    Petitioners,                   )
                                                   )
        v.                                         )    Civil Action No. 05-492 (JR)
                                                   )
GEORGE W. BUSH,                                    )
President of the United States, *et al.,*           )
                                                   )
                    Respondents.                   )
_____ )

ADEL HAMLILY, *et al.,*                             )
                                                   )
                    Petitioners,                   )
                                                   )
        v.                                         )    Civil Action No. 05-763 (JDB)
                                                   )
GEORGE W. BUSH,                                    )
President of the United States, *et al.,*           )
                                                   )
                    Respondents.                   )
_____ )

|  | ) |  |
| --- | --- | --- |
| AHMED ABU IMRAN, *et al.,* | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-764 (CKK) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| BENJAMIN MOHAMMED | ) | |
| AL HABASHI, *et al.,* | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-765 (EGS) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| ABDUL HADI IBN EL HATHILY | ) | |
| AL HAMAMY, *et al.,* | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-766 (RJL) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

## RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONERS' MOTION FOR A PRELIMINARY INJUNCTION CONCERNING CONDITIONS OF CONFINEMENT

Petitioners have filed a Motion for a Preliminary Injunction Concerning Conditions of

Confinement ("Motion for Preliminary Injunction")[1] based upon unsupported and inaccurate

allegations pertaining to hunger strike protests of some of the detainees currently held at the

United States Naval Base at Guantanamo Bay, Cuba ("Guantanamo").  Petitioners' counsel

points to an ongoing hunger strike by some of the Guantanamo detainees and resorts to

sensational accounts of the general effects of a hunger strike on the human body.  See Motion for

Preliminary Injunction at 5-6, 43.  Contrary to petitioners' spurious allegations, however, the

medical personnel at Guantanamo have long-standing procedures in place for responding

appropriately to hunger strikes that include protocols to intervene to take medically appropriate

measures to preserve detainees' lives and health.  As noted in the sworn declaration of Major

General Jay W. Hood, the Commander of Joint Task Force-Guantanamo ("JTF-GTMO"),

security forces at Guantanamo monitor each detainee's daily intake of food and water.

Declaration of MG Jay W. Hood ("Hood Decl.") ¶ 5 (attached as Exhibit A).  If medical

personnel have reason to believe that the continuation of a hunger strike might endanger the

health of a detainee, the detainee is admitted to the detention hospital.  Id. ¶ 6.  The detainee is

then encouraged to eat food and drink liquids and is counseled on the health risks associated with

refusing to do so.  Id.  If a detainee continues to refuse to eat or drink and a medical officer

determines that the detainee's health or life might be seriously threatened if treatment is not

promptly administered, feeding by intravenous means or through a feeding tube will be

authorized by Major General Hood.  Id. ¶ 8.  No detainee at Guantanamo has ever died, from a

---

[1]  Counsel for petitioners has filed the same Motion for Preliminary Injunction in each of the above-captioned cases.  See Motion for Preliminary Injunction at 1 n.1.  For the convenience of the Court and the parties, respondents hereby consolidate their responses to each of those motions in this memorandum.

hunger strike or otherwise, since the detentions at issue in these cases began.

Petitioners' counsel presumes, without any legitimate basis, that the military would not and will not intervene to provide medically appropriate measures to preserve the lives and health of hunger-striking detainees,[2] leading counsel to the baseless conclusion that "people are likely to die."  See Motion for Preliminary Injunction at 3, 8-9, 43.  Petitioner then relies upon that erroneous premise to justify emergency intervention by the Court.  Tellingly, however, petitioners' motion fails to specifically request any direct intervention by the Court directing medical intervention in order to preserve the lives or health of detainees participating in the hunger strike; rather, counsel requests that general conditions of confinement at Guantanamo be improved.  See, e.g., id. at 46 (Prayer for Relief).  In other words, petitioners' counsel improperly seeks to employ the processes of this Court, along with shocking, vituperative, and trumped up rhetoric, merely to further the demands of various hunger-striking detainees.  See, e.g., id. at 9-13 (castigating Military for allegedly negotiating with hunger-striking detainees in bad faith); id. at 43 (same); id. at 45 (same; also accusing respondents of being "paralyzed by their arrogance, blinded by their misguided quest for vengeance" and "prepared to sit back and have prisoners starve themselves to death").   Court processes, however, should only be used for legitimate, case-specific dispute resolution.  Cf. Pigford v. Veneman, 225 F.R.D. 54, 59 (D.D.C. 2005) (Friedman, J.) (striking various notices filed in the case and explaining that "the purpose

---

[2]  The only support that counsel for petitioners offers to substantiate his allegation that the military would not intervene to save the life and protect the health of a detainee is an unsworn statement, that counsel has not provided (see infra note 3), from a detainee which, by its own terms, merely indicates that a doctor noted verbal statements from detainees indicating that they did not wish to be resuscitated if they lapsed into a coma.  See Motion for Preliminary Injunction at 11.

of such a filing is not to carry on a conversation with the world at large.  The Court is a forum

for dispute resolution, not a means of disseminating press releases, [or] letters to the two political

branches of government (the Congress and the Executive Branch) . . . .").[3]

Thus, stripped of its purported urgency and baseless alleged dire outcomes (outcomes

contradicted by the sworn declaration of Major General Hood), and disregarding its improper

invective, petitioners' motion is merely a repeat of similar motions filed by petitioners' counsel

in other related cases challenging the general conditions of confinement at Guantanamo.  The

motion should be denied for multiple reasons, including the fact that these cases are stayed.[4]  In

the motion, petitioners seek, among other things, an order requiring respondents to allegedly

---

[3] In addition to its baseless and inaccurate premises and approach, petitioners' motion is riddled with assertions based often on nothing more than layer upon layer of hearsay contained in unsworn or incompetent evidence – such as press reports and other apparently unsworn memos not provided to the Court – and for this reason also, it should be stricken from the record. See, e.g., Motion for Preliminary Injunction at 7 (alleging that "the military simply cannot be trusted to provide the Court and the public with accurate and reliable information about the prisoners' health and welfare" and attributing the statement "'[w]e care nothing if one of you dies'" to unnamed military personnel); id. at 9-10 (string of allegations based on "Memo on Conditions in Guantanamo Bay," which is not otherwise described); id. at 45 (accusing respondents of being "paralyzed by their arrogance, blinded by their misguided quest for vengeance" and "prepared to sit back and have prisoners starve themselves to death"); see also infra Section II.  Rule 11 of the Federal Rules of Civil Procedure provides, in relevant part, that by presenting to the court any "pleading, written motion, or other paper," an attorney "is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the pleading "is not being filed for an improper purpose, such as to harass . . . and [that] the allegations and other factual contentions have evidentiary support . . . ."  Fed. R. Civ. P. 11(b).  And Rule 12(f) of the Federal Rules of Civil Procedure provides that a court may strike any matter that is "redundant, immaterial, impertinent, or scandalous."  Fed. R. Civ. P. 12(f).  Although striking filings is generally disfavored as an extreme remedy, a court has "liberal discretion" to strike such filings as it deems appropriate under Rule 12(f).  Stanbury Law Firm v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000); see also 2 Moore's Federal Practice § 12.37[1] at 12-93 to 12-94 (3d ed. 2002).

[4] In Habashi v. Bush, Case No. 05-765 (EGS), respondents' Motion to Stay, (dkt. no. 5) (Apr. 20, 2005), remains pending.

"cease all acts of torture and cruel, inhuman and degrading treatment of Petitioners" and

"mandating that Respondents treat Petitioners at least according to minimum acceptable

standards." Motion for Preliminary Injunction at 46. Petitioners' motion should be denied in its

entirety because petitioners have failed to provide a sufficient factual or legal basis to justify

departure from the stays in these cases for purposes of the requested relief. A preliminary

injunction is not warranted while the stays are in place and while issues underlying the purported

legal bases for petitioners' challenges to their general conditions of confinement are being

reviewed on appeal by the D.C. Circuit in related cases involving other detainees or will likely

be impacted by such appeals. Further, as mentioned, the asserted factual basis for petitioners'

complaints about the alleged hunger strike and other conditions at Guantanamo is insufficient to

justify the Court's intrusion into the decisions of military authorities regarding the appropriate

manner in which to detain and treat petitioners. Accordingly, petitioners' Motion for

Preliminary Injunction should be denied.

## **BACKGROUND**

Petitioners are non-resident aliens who are currently detained at Guantanamo. They

initiated the above-captioned cases by filing petitions for writs of habeas corpus challenging

their confinement. Prior to the filing of many of the petitions in these cases, on January 19,

2005, Judge Richard Leon of this Court issued a Memorandum Opinion and Order granting

respondents' motion to dismiss in two other Guantanamo detainee cases. See Khalid v. Bush,

Boumediene v. Bush, Case Nos. 04-CV-1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp. 2d 311

(D.D.C. 2005). Judge Leon held that "no viable legal theory exists" by which the Court "could

issue a writ of habeas corpus" in favor of the Guantanamo detainees. Id. at 314. In reaching this

decision, Judge Leon concluded that aliens held at Guantanamo, that is, outside the sovereign territory of the United States, are not possessed of any constitutional rights.  Furthermore, Judge Leon determined that "the Court's role in reviewing the military's decision to capture and detain a non-resident alien is, and must be, highly circumscribed," and that the Court would "not probe into the factual basis for the petitioners' detention."  Id. at 329.  According to Judge Leon, the Constitution allocates exercise of war powers "among Congress and the Executive, not the Judiciary," and such separation of powers concerns necessarily limit any role of the Court in reviewing challenges of non-resident aliens to their detention in the midst of ongoing armed conflict.  Id.  Judge Leon also noted that petitioners' challenges to the conditions of their confinement did not support the issuance of a writ of habeas corpus because such claims, even if true, would not render the custody itself unlawful.  Id. at 324-25.  Judge Leon explained that separation of powers principles prevent the judiciary from scrutinizing the conditions of the aliens' detention because such matters are the province of the Executive and Legislative branches.  Id. at 328.  Petitioners in Khalid and Boumediene then appealed.

On January 31, 2005, Judge Joyce Hens Green entered a Memorandum Opinion and Order in eleven of the pending Guantanamo habeas cases, denying in part and granting in part respondents' motion to dismiss or for judgment as a matter of law.  See Memorandum Opinion Denying in Part and Granting in Part Respondents' Motion to Dismiss or for Judgment as a Matter of Law, No. 02-CV-0299, et al., In re Guantanamo Detainee Cases, 355 F. Supp. 2d 443 (D.D.C. 2005).  In contrast to Judge Leon's decision, Judge Green held that "the detainees at Guantanamo Bay have the fundamental right to due process of law under the Fifth Amendment" to challenge the legality of their detention through petitions for writs of habeas corpus.  Id. at

463.  Based on this decision, Judge Green concluded that the Combatant Status Review Tribunal ("CSRT") proceedings the military has used in assessing detainees' enemy combatant status do not satisfy procedural due process requirements.  Id. at 465-78.  Judge Green also adopted the reasoning of Judge Robertson in Hamdan v. Rumsfeld, 344 F. Supp. 2d 152, 165 (D.D.C. 2004), rev'd, 415 F.3d 33 (D.C. Cir. 2005), to conclude that Articles 4 and 5 of the Third Geneva Convention are "self-executing" and can provide some petitioners – those held because of their relationship with the Taliban – with a judicially enforceable claim in a habeas action to a hearing consistent with Article 5 of the Geneva Convention to determine whether the detainee qualifies for "prisoner of war" protections, as defined by Article 4 of the Convention.  Id. at 478-80.[5] Finally, Judge Green dismissed petitioners' remaining claims under the Sixth, Eighth, and Fourteenth Amendments, the Suspension Clause, other international treaties, and under Army Regulation 190-8, the Alien Tort Statute and the Administrative Procedure Act.  Id. at 480-81.

On February 3, 2005, in response to a motion filed by respondents, Judge Green certified for interlocutory appeal her January 31, 2005 opinion and stayed proceedings in the eleven cases coordinated in In re Guantanamo Detainee Cases for all purposes pending the resolution of all appeals.  Various petitioners in the eleven cases sought reconsideration of Judge Green's stay order, arguing that the Court should permit discovery and proceedings regarding complaints about detainee living conditions, similar to the charges asserted by petitioners in the present cases, to go forward, but Judge Green denied the motion for reconsideration

---

[5]  On July 15, 2005, the D.C. Circuit reversed the lower court's decision in Hamdan, and squarely held that "the 1949 Geneva Convention does not confer . . . a right to enforce its provisions in court."  Hamdan v. Rumsfeld, 415 F.3d 33, 40 (D.C. Cir. 2005), petition for cert. filed.

in light of the substantial resources that would be expended and the significant
burdens that would be incurred should this litigation go forward, and . . . [in]
recognition that a reversal of the Court's January 31, 2005 rulings would avoid
the expenditure of such resources and incurrence of such burdens . . . .

See In re Guantanamo Detainee Cases, Order Denying Motion for Reconsideration of Order

Granting Stay Pending Appeal (Feb. 7, 2005).

On February 9, 2005, pursuant to Judge Green's certification, respondents filed a petition

for interlocutory appeal of the January 31, 2005 decision with the D.C. Circuit, see 28 U.S.C.

§ 1292(b), and requested that the appeal proceed on an expedited basis.  Petitioners, in the

coordinated cases, in responding to the petition for interlocutory appeal, filed their own cross-

petition for interlocutory appeal.  Oral argument on the merits of the appeal, along with appeals

by petitioners in Khalid and Boumediene, was heard on September 8, 2005.

During the course of this litigation, Judges in the above-captioned cases have generally

granted respondents' motions to stay and have stayed these cases pending resolution of all

appeals of Judge Green's January 31, 2005 decision in In re Guantanamo Detainee Cases and of

Judge Leon's January 19, 2005 decision in Khalid v. Bush.  See Kabir v. Bush, Case No. 05-431

(RJL), Order (dkt. no. 10) (Apr. 7, 2005); Imran v. Bush, Case No. 05-764 (CKK), Order (dkt.

no. 6) (Apr. 25, 2005); El-Banna v. Bush, Case No. 04-1144 (RWR), Order Granting in Part and

Denying in Part Respondents' Motion for Certification of January 31, 2005 Orders and for Stay

(dkt. no. 122) (Feb. 3, 2005); Hamamy v. Bush, Case No. 05-766 (RJL), Order (dkt. no. 6) (May

4, 2005); Hamlily v. Bush, Case No. 05-763 (JDB), Order (dkt. no. 10) (June 7, 2005); Aziz v.

Bush, Case No. 05-492 (JR), Order (dkt. no. 16) (Apr. 20, 2005); Sliti v. Bush, Case No. 05-429

(RJL), Order (dkt. no. 8) (Apr. 7, 2005); Deghayes v. Bush, Case No. 04-2215 (RMC), Minute

Order (dkt. no. 7) (Feb. 22, 2005).[6]

On September 1, 2005, petitioners filed their current Motion For Preliminary Injunction with the Court Security Officers, as required by the governing protective orders in these cases. As mentioned above, in this motion petitioners reference an ongoing hunger strike by some detainees at Guantanamo allegedly done in protest of legal issues related to their continued detention and the conditions under which they are confined. See Motion for Preliminary Injunction at 11-13. The motion lists numerous allegations concerning the overall conditions of confinement at Guantanamo, including complaints about noisy fans, bright lights, lack of socialization, religious intolerance, medical neglect, and bad food. See id. at 14-28. Petitioners request preliminary injunctive relief requiring respondents to allegedly "cease all acts of torture and cruel, inhuman and degrading treatment of Petitioners" and "mandating that Respondents treat Petitioners at least according to minimum acceptable standards" which are not stated or described. Id. at 46.

## ARGUMENT

I.    **The Court Should Not Address Petitioners' Complaints About the General Conditions of Confinement at Guantanamo While the Case is Stayed and the Asserted Legal Bases for Their Claims Could be Resolved or Determined by the Appeals to the D.C. Circuit.**

As an initial matter, as explained supra, the existence of any hunger strike among certain Guantanamo detainees provides no basis for emergency relief of any kind here. The Military has protocols in place to preserve the lives and health of hunger-striking detainees. In any case, to

---

[6] As noted, in Habashi v. Bush, Case No. 05-765 (EGS), respondents' Motion to Stay, (dkt. no. 5) (Apr. 20, 2005), remains pending.

the extent that conditions of confinement claims are even cognizable in habeas proceedings,[7] the

Court should not entertain petitioners' challenges to the overall conditions of confinement at

Guantanamo when the legal bases for any such claims at all are involved in the appeal to the

D.C. Circuit.  Petitioners rely on the First, Fifth, Eighth, and Fourteenth Amendments to the

United States Constitution, as well as various other statutes and the Third Geneva Convention,

to support their Motion for Preliminary Injunction.  See Motion for Preliminary Injunction at 28-

38.  They ignore, however, the fact that the D.C. Circuit has already resolved their Geneva

Convention claim in respondents' favor and that other appeals are presently pending in the D.C.

Circuit that will address the existence and scope of constitutional and other core rights as applied

to aliens detained at Guantanamo.

As to petitioners' claims under the Third Geneva Convention, the D.C. Circuit recently

held that the Third Geneva Convention is not privately enforceable in court.  Hamdan v.

Rumsfeld, 415 F.3d 33, 40 (D.C. Cir. 2005), petition for cert. filed.[8]

Furthermore, as noted above, in Khalid v. Bush and Boumediene v. Bush, Case Nos. 04-

_____

[7]  The Supreme Court has never squarely resolved whether challenges to conditions of
confinement may be brought under habeas proceedings.  See Bell v. Wolfish, 441 U.S. 520, 526
n.6 (1979) ("Thus, we leave for another day the question of the propriety of using a writ of
habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or
length of confinement itself.").

[8]  Additionally, petitioners' attempt to assert a breach of contract claim and their request
for specific performance of the alleged oral promise of a military official to apply the Geneva
Conventions at Guantanamo are entirely without merit.  No statute provides authorization for or
federal court jurisdiction over suits for the specific performance of a pure contract against the
government.  Richardson v. Morris, 409 U.S. 464, 465-66 (1973).  Indeed, as a general matter,
"[f]ederal courts do not have the power to order specific performance by the United States of its
alleged contractual obligations." Coggeshall Dev. Corp. v. Diamond, 884 F.2d 1, 3 (1st Cir.
1989).  Accordingly, petitioners' contract claim to enforce an alleged oral promise in this Court
is barred by sovereign immunity, and the Court lacks jurisdiction over the claim.

CV-1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), Judge Leon held that "no viable legal theory exists" by which the Court "could issue a writ of habeas corpus" in favor of the Guantanamo detainees.  Id. at 314.  In reaching this decision, the Court concluded that aliens held at Guantanamo "possess no cognizable constitutional rights" including rights under the Fifth, Sixth, and Eighth Amendments.  Id. at 321.  Thus, Judge Leon concluded that petitioners "lack any viable theory under the United States Constitution to challenge the lawfulness of their continued detention at Guantanamo."  Id. at 323.  Judge Leon also found that petitioners failed to identify any United States law or international treaty that could serve as a basis for the issuance of a writ of habeas corpus.  Id. at 324-27.

Conversely, with respect to the issue of constitutional rights, Judge Green, in In re Guantanamo Detainee Cases, 355 F. Supp.2d 443 (D.D.C. 2005), found only that "the detainees at Guantanamo Bay have the fundamental right to due process of law under the Fifth Amendment" to challenge the legality of their detention through petitions for writs of habeas corpus.  Id. at 463.[9]  Judge Green, however, dismissed the detainees' remaining claims under the Sixth, Eighth, and Fourteenth Amendments, the Suspension Clause, other international treaties, and under Army Regulation 190-8, the Alien Tort Statute and the Administrative Procedure Act.[10]  Id. at 480-81.

---

[9]  Because Judge Green held that the Guantanamo detainees have a Fifth Amendment right merely to challenge the fact of their confinement, her decision does not directly authorize detainees to contest the conditions of their confinement.

[10]  To the extent petitioners assert that their treatment and the manner in which they are confined violate provisions of the Constitution other than the Fifth Amendment, such claims lack any merit.  As mentioned, in Khalid, Judge Leon determined that the non-resident aliens detained at Guantanamo have no cognizable constitutional rights whatsoever.  Khalid, 355 F. Supp. 2d at 321.  And Judge Green rejected petitioners' non-Fifth Amendment claims.  See In re

The D.C. Circuit granted interlocutory appeal in Judge Green's case and will determine

in that case and in the appeal of Judge Leon's decisions in <u>Khalid</u> and <u>Boumediene</u>, on an

expedited basis, whether and to what extent detainees at Guantanamo have any rights under the

United States Constitution – the core legal basis, other than the Third Geneva Convention claim

already resolved by the D.C. Circuit, asserted by petitioners in their present motion.[11]   In light of

_____

<u>Guantanamo Detainee Cases</u>, 355 F. Supp. 2d at 480-81.  In any event, whether Guantanamo
detainees have any rights under the Constitution is an issue currently on appeal before the D.C.
Circuit.

[11]   Petitioners throw out an assortment of additional novel legal theories as bases for the
injunctive relief they seek.  <u>See</u> Motion for Preliminary Injunction at 28-38.  Each of these legal
theories, however, will not likely be successful and, in any event, may be substantially impacted
by the D.C. Circuit's decision in the appeals of Judge Green's decision in <u>In re Guantanamo
Detainee Cases</u> and of Judge Leon's decision in <u>Khalid v. Bush</u>.
    Petitioners' claim under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §
2000bb, <u>see</u> Motion for Preliminary Injunction at 28-30, presumes that detainees at Guantanamo
are entitled to free exercise rights under the First Amendment.  RFRA is based on the First
Amendment's protection of free exercise of religion, 42 U.S.C. § 2000bb(a)(1), but the issue of
whether non-resident alien detainees with no voluntary connections to the United States, such as
petitioners, can avail themselves of constitutional rights at all is the subject of the pending D.C.
Circuit appeals in <u>Khalid</u> and <u>In re Guantanamo Detainee Cases</u>, which were argued on
September 8, 2005.  Accordingly, this Court should abstain from reviewing petitioners' passing
invocation of RFRA and not consider it a legitimate basis to grant injunctive relief while the
appeals are pending.
    Moreover, under current Supreme Court and D.C. Circuit law RFRA may not apply to
individuals at Guantanamo Bay.  In <u>City of Boerne v. Flores</u>, 521 U.S. 507, 532-36 (1997), the
Supreme Court invalidated RFRA as applied to States and their subdivisions, holding that the
Act exceeded Congress' remedial powers under the Fourteenth Amendment.  The Supreme
Court "has not had occasion to rule on the matter" of whether RFRA "remains operative as to the
Federal Government."  <u>Cutter v. Wilkinson</u>, 125 S. Ct. 2113, 2118 n.2 (2005).  Further, while the
D.C. Circuit has found RFRA applicable to the federal government, <u>Henderson v. Kennedy</u>, 265
F.3d 1072, 1073 (D.C. Cir. 2001), neither the Supreme Court nor the D.C. Circuit has ruled on
whether RFRA is operative outside the United States.  <u>See Cutter</u>, 125 S. Ct. at 2118 n.2 ("This
Court . . . has not had occasion to rule on the matter" of whether RFRA is operative as to
"federal territories and possessions.").  It is a "longstanding principle of American law" that
congressional legislation is presumed not to have extraterritorial application unless such intent is
clearly manifested, <u>EEOC v. Arabian American Oil Co.</u>, 499 U.S. 244, 248 (1991), and such
intent is in no way evidenced in RFRA.  (While the Ninth Circuit found that RFRA applies to

the potential for the D.C. Circuit's ruling to moot or at least significantly impact the legal bases

for the present motion,[12] the likelihood that any decision by this Court regarding petitioners'

right to challenge the nature of the general confinement conditions at Guantanamo would have to

be re-litigated or revisited once the Court of Appeals provides guidance on these legal issues,

and for the other reasons discussed infra, the Court should not consider petitioners' current

challenges to the confinement conditions at Guantanamo until the appeals are resolved.[13]

---

Guam, a federal instrumentality, Guam v. Guerrero, 290 F.3d 1210, 1221-22 (2002), that case is
inapposite. RFRA in "its original form" expressly applied to Guam but not to Guantanamo Bay.
See id. at 1221. Moreover, the Ninth Circuit found that RFRA applied to Guam because it was a
federal territory, and Guantanamo Bay is not a federal territory. Although the Supreme Court in
Rasul v. Bush, 124 S. Ct. 2686, 2696 (2004), held that jurisdiction for the purposes of the habeas
corpus statute extended to Guantanamo Bay, the Court did not find that Guantanamo is itself a
federal territory. Also, while the Court specifically discussed the historical reach of the writ of
habeas corpus to "so-called 'exempt jurisdictions,' where ordinary writs do not run, and all other
dominions under the sovereign's control," id. at 2697 (citation omitted), RFRA does not have a
similarly long, historical jurisdictional reach.)

Petitioners' "Right to Life" claim also fails to entitle them to injunctive relief. See
Motion for Preliminary Injunction at 33. Petitioners rely on statements from the Supreme
Court's decisions in Roe v. Wade, 410 U.S. 113 (1973), and Cruzan v. Missouri, 497 U.S. 261
(1990), to support their request that their conditions of confinement be improved. See id. These
cases, however, involve the entirely separate subjects of abortion and the right to reject life-
sustaining medical treatment. And although these cases do support the principle that the
government has an interest in protecting human life, as demonstrated above, the military
authorities and medical staff at Guantanamo will intervene to take appropriate medical measures
before a detainee's life is in jeopardy as a result of a hunger strike. In any event, the extent to
which petitioners may enjoy the Fifth Amendment's protection against the deprivation of life
without due process of law will be addressed by the D.C. Circuit, and the Court should not order
relief on that basis while the issue is on appeal.

[12] Petitioners' general complaints about the process they have received through the
Combatant Status Review Tribunals (CSRTs) are also on appeal to the D.C. Circuit. See Motion
for Preliminary Injunction at 2, 14. As mentioned, Judge Green found the CSRT proceedings to
be inadequate to satisfy procedural due process requirements. In re Guantanamo Detainee
Cases, 355 F. Supp. 2d at 465-78. Accordingly, the D.C. Circuit has been presented with this
issue.

[13] Other Judges of this Court have rejected similar challenges by Guantanamo detainees
to their treatment and conditions of confinement in light of the D.C. Circuit appeals. In Al Odah

Accordingly, the Court should deny petitioners' Motion for Preliminary Injunction.

## II.    The Factual Record Does Not Warrant the Court's Involvement in the General Conditions In Which Detainees at Guantanamo are Confined.

Regardless of the pendency of the appeals involving the core legal bases for petitioners'
motion, the record here does not warrant the Court's involvement in petitioners' and other
detainees' conditions of confinement; that is, petitioners have not made a sufficient showing of
irreparable harm.  Even if petitioners were possessed of constitutional rights, the showing
required of them would be demanding.  See infra Section III. B. (indicating that petitioners likely
would have to demonstrate, at a minimum, that military personnel were deliberately indifferent
to their health or safety).  Petitioners, however, rely on incompetent and unpersuasive evidence
that often does not pertain specifically to them and their particular conditions and, in any event,
is refuted by sworn and compelling declarations from military authorities with firsthand
knowledge of the general conditions, medical care, and other treatment provided to detainees at
Guantanamo.

---

v. United States, Case No. 02-0828 (CKK), Judge Green, acting as coordinating judge, twice
rejected petitioners' requests to assert claims objecting to their confinement conditions in light of
the appeals pending in the D.C. Circuit and the fact that the case was stayed.  See Al Odah,
Order Granting in Part and Denying in Part Respondents' Motion for Certification of Jan. 31,
2005 Orders and for Stay (Feb. 3, 2005); Order Denying Motion for Reconsideration of Order
Granting Stay Pending Appeal (Feb. 7, 2005) (refusing to allow claims regarding conditions of
confinement to proceed "in light of the substantial resources that would be expended and the
significant burdens that would be incurred should this litigation go forward").  The Al Odah
petitioners' third attempt to litigate their conditions of confinement claims is currently pending.
See Plaintiffs-Petitioners' Motion For a Preliminary Injunction and Provisional Motion to
Modify Stay Pending Appeals, filed Mar. 11, 2005, in Al Odah.  And most recently, Judge Leon
denied a detainee's motion for a preliminary injunction challenging his medical treatment at
Guantanamo in light of the fact that the case is stayed pending the appeals in the D.C. Circuit.
See Sliti v. Bush, Case No. 05-429 (RJL), Memorandum Opinion and Order at 4-5 (dkt. no. 18)
(August 30, 2005).  See also infra at Section II (discussing denial of conditions claims in O.K. v.
Bush and Paracha v. Bush).

Respondents have already refuted petitioners' false and inaccurate assertions regarding respondents' treatment of detainees engaging in hunger strikes by demonstrating that respondents have detailed protocols in place for dealing humanely with such behavior, including, if necessary, intervening to take medically appropriate measures to preserve the lives and health of detainees.  See supra at 1-2.  Accordingly, despite petitioners' inflammatory assertions, the detainees' health is being closely monitored by the Guantanamo medical staff, which will step in as necessary and follow medically appropriate measures to protect the lives and the health of the detainees.  Based on uncontroverted sworn evidence of record, therefore, petitioners will not suffer irreparable injury as a result of a hunger strike.

The remainder of petitioners' various allegations regarding poor conditions and abusive treatment are supported only by unreliable and unpersuasive evidence.  Petitioners' assorted complaints – including, for example, assertions that the Koran is being mistreated, that detainees are denied showers and being physically abused, and that scorpions are in the food – are almost entirely supported merely with citations to either unsworn hearsay statements of a few detainees or to unidentified "memos" containing unsworn hearsay statements of detainees, all of which were presumably drafted by petitioner's counsel and none of which have been provided to opposing counsel or the Court.[14]  See, e.g., Motion for Preliminary Injunction at 16 n.65, 17 n.68, 23 n.82; see also id. at notes 30-99 (repeatedly citing to "Deghayes Memo" and "Memo on Conditions in Guantanamo Bay" to support various factual allegations).  Respondents dispute

---

[14]  Petitioners also allege that juveniles have been mistreated.  See Motion for Preliminary Injunction at 18-20.  Petitioners' assertion, however, that detainee O.K. is a juvenile is incorrect.  See O.K. v. Bush, 344 F. Supp. 2d 44, 62 n.25 (D.D.C. 2004) (indicating that O.K. is no longer a juvenile but is now an adult).

these conclusory statements, which generally lack specificity in details, dates, and times, and do not in any event amount to sufficiently compelling evidence on which to afford petitioners the injunctive relief they seek.[15]

Moreover, much of the evidence set forth in petitioners' motion describes the alleged treatment of only a few of the petitioners in these cases, as well as at least one other detainee who is not a petitioner.  For many of the petitioners, there is no evidence whatsoever pertaining to them specifically.  For example, petitioners Adel Hamlily and Abdul Hadi Ibn El Hathily Al Hamamy are not even mentioned in the motion.  Accordingly, many of the petitioners have not demonstrated a sufficient injury in fact to provide them standing to seek the sweeping relief requested in the motion.  See Lewis v. Casey, 518 U.S. 343, 350-51 (1996) (explaining that "[i]f . . . a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care . . . simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons" and concluding that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.  That would be the precise analog of the healthy inmate claiming constitutional

---

[15]  Counsel's lament that various obstacles make it difficult to obtain competent and verified information from his clients, see Motion for Preliminary Injunction at 1 n.2, is unavailing.  See O.K. v. Bush, 344 F. Supp. 2d 44, 59 (D.D.C. 2004) (finding that "[p]etitioners cannot blame their inability to supply evidence [to support their motion] entirely, or even largely, on the inaccessibility of petitioner at Guantanamo.").  Counsel has made multiple, extended visits to Guantanamo in recent months, as many or more than any other counsel in the Guantanamo habeas cases, and has had ample opportunities to obtain sworn declarations, but has failed to do so.

violation because of the inadequacy of the prison infirmary.")

Additionally, many of petitioners' complaints, even if true, are relatively minor and do not warrant court intrusion into the daily operations of a military detention center.  For example, petitioners allege that they have been subjected to noisy fans, prayers with erroneous words, cold pancakes, and undercooked rice.  See Motion for Preliminary Injunction at 21, 26, 27, 28.  Such complaints do not require the extraordinary relief of a preliminary injunction.  In sum, the factual support for petitioners' allegations regarding their conditions of confinement and other treatment at Guantanamo amounts to mere fantastic storytelling based on incompetent evidence that does not warrant court intervention.[16]

Other competent sources of information, however, belie many of the assertions in petitioners' motion.  Contrary to some of petitioners' allegations, detainees at Guantanamo receive extensive, high-level medical care, as noted in the sworn declaration of Dr. John S. Edmondson, the Commander of the U.S. Navy Hospital at Guantanamo.  See Declaration of Dr. John S. Edmondson ("Edmondson Decl.") (attached hereto as Exhibit B; originally submitted in O.K. v. Bush, 04-CV-1136).[17]  The Guantanamo detention center hospital is an 18-bed facility with a medical staff of seventy consisting of highly trained doctors, nurses, technicians, and

---

[16]  Respondents deny petitioners' various allegations of mistreatment but, given the absence of details and the varied scope of the assertions, an attempt to rebut each individual allegation here would be unduly burdensome and, in any event, is unwarranted as explained in the text.  Respondents, however, reserve the right to respond to such allegations with greater specificity should the Court deem it necessary.

[17]  The Edmondson Declaration is the version filed on the public record in O.K. v. Bush, which has health information specific to petitioner O.K. redacted.  See O.K. v. Bush, 04-CV-1136 (JDB), Respondents' Motion to Designate as "Protected Information" Certain Information in Memorandum of Points and Authorities in Opposition to Petitioner's Application for Preliminary Injunction and Two Declarations in Support Thereof (dkt. no. 116) (Apr. 13, 2005).

administrative personnel.  Id. ¶ 3.  Detainees receive a comprehensive physical exam on their

arrival and can request medical assistance at any time by telling a guard or by informing medical

personnel who make rounds to the cellblocks every other day.  Id. ¶ 5.  From just January, 2004

to November, 2004, the hospital staff conducted over 17,000 outpatient visits and has treated the

detainees for a wide variety of medical conditions including hepatitis, diabetes, and tuberculosis.

Id. ¶¶ 5, 7.  The staff has also provided prosthetic limbs to some detainees and has removed

cancerous tumors from several of them.  Kathleen T. Rhem, "Guantanamo Detainees Receiving

'First Rate' Medical Care," American Forces Information Service, February 18, 2005 (attached

as Exhibit C).  The detention center hospital is also supported by a twenty-one member

Behavioral Health Service (BHS) staff, including a board-certified psychiatrist and a Ph.D.

psychologist, to address any psychological issues presented by the detainees.[18]  Edmondson

Decl. ¶ 4.  In sum, detainees, such as petitioners, receive high quality medical care that is

comparable to the care provided to active duty members of the armed forces.  Id.  ¶ 8; see also

O.K. v. Bush, 344 F. Supp. 2d 44, 62 (D.D.C. 2004) (finding that Dr. Edmondson's declaration

describes "in substantial detail a high level of medical care" provided at the Guantanamo

detention center medical facility and noting that newspaper reports corroborate that description).

Furthermore, compelling evidence indicates that the military's mission is to treat all

Guantanamo detainees humanely.  See Declaration of Col. John A. Hadjis ("Hadjis Decl.") ¶ 2

---

[18] Petitioners' allegation that medical care is made contingent on a detainee's
cooperation with interrogations, see Motion for Preliminary Injunction at 24, is completely
unfounded and inaccurate.  Contrary to petitioners' assertion, medical care is not affected by a
detainee's degree of cooperation in interrogations, and medical records of detainees are not
available to interrogators.  Edmondson Decl. ¶ 10.

(attached as Exhibit D) (originally submitted in <u>O.K. v. Bush</u>, Case No. 04-1136 (JDB)).[19]  To

that end, "[a]ll detainees receive adequate shelter, food and water, and medical care at all

times."[20]  <u>Id.</u> ¶ 3.  Moreover, mistreatment of detainees is not permitted, and the military employs

standard operating procedures and training programs to ensure that detainees are not abused and

that any violations of those procedures are investigated.  <u>Id.</u> ¶ 2.[21]

     Courts have found the foregoing declarations to be more reliable and persuasive than

various unsworn statements from detainees and other assorted press articles and, as a result, have

denied similar requests for injunctive relief regarding conditions of confinement and other

treatment of detainees at Guantanamo.  In particular, in <u>O.K. v. Bush</u>, 344 F. Supp. 2d 44, 60-63

(D.D.C. 2004), Judge Bates rejected a detainee's request for an order requiring an independent

medical examination and production of his medical records finding that petitioner had not

offered sufficient competent evidence of medical neglect, especially in light of the sworn

---

[19]  Colonel Hadjis was the Chief of Staff of the Joint Task Force-Guantanamo Bay, Guantanamo Bay, Cuba and oversaw the Joint Detention Operations Group at Guantanamo at the time he executed his declaration.  Hadjis Decl. ¶ 1.

[20]  Detainees also receive accommodations for their religious beliefs and practices.  <u>See</u> Donna Miles, "Joint Task Force Respects Detainees' Religious Practices," American Forces Information Service, June 29, 2005 (attached as Exhibit E) (indicating that, among other accommodations, the Muslim "call to prayer" is broadcast over the loudspeaker five times a day; prayer caps, beads, and oil are provided to detainees; each detainee is issued a personal copy of the Koran, detainees receive food that satisfies Islamic certification requirements, Islamic holy periods, such as Ramadan, are observed, and the Guantanamo staff receive religious and cultural sensitivity training before beginning their assignments).

[21]  Petitioners' complaints about the handling of the mail, <u>see</u> Motion for Preliminary Injunction at 26, are also rebutted by competent evidence.  Each detainee is given the opportunity to send and receive mail, and detainees cannot lose mail privileges for any reason. Declaration of 1LT Wade M. Brown ¶ 2, originally submitted in <u>John Does 1-570 v. Bush</u>, Case No. 05-313 (CKK) (attached as Exhibit F).  Moreover, contrary to petitioners' allegations, both incoming and outgoing mail is typically processed within fourteen days.  <u>Id.</u> ¶ 5.

declaration of Dr. Edmondson detailing the extensive medical care afforded to detainees at

Guantanamo.  Subsequently, Judge Bates also relied on the declarations of Dr. Edmondson and

Colonel Hadjis, among others, in denying the detainee's request for a preliminary injunction

against alleged torture or other cruel and degrading treatment.  O.K. v. Bush, 377 F. Supp. 2d

102, 109 (D.D.C. 2005).  See also Paracha v. Bush, Case No. 04-2022 (PLF), Memorandum

Opinion and Order at 3 (dkt. no. 58) (June 16, 2005) (denying petitioner's motion for

preliminary injunction challenging, in part, his conditions of confinement, due to lack of

competent evidence of his alleged mistreatment).

As demonstrated, petitioners have failed to make a sufficient showing of irreparable harm

or to offer any competent and compelling evidence that their physical or mental condition

warrants departure from the stay in this case or compels the granting of their request for the

extraordinary relief of a preliminary injunction.  A request for preliminary injunctive relief "is an

extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear

showing*, carries the burden of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)

(emphasis in original).  Petitioners have failed to make an appropriate showing here.

III.    **The Court Should Not Grant Petitioners' Requested Relief When They Cannot
        Demonstrate a Likelihood of Success and the Requested Relief Would Impose
        Significant Harms on the Military and the Public Interest.**

Petitioners' request for a preliminary injunction regarding their treatment and other

general conditions of confinement also should be denied because petitioners cannot demonstrate

a likelihood of success on such claims generally and because the requested relief would impose

significant harms on the government and the public interest by improperly interfering with the

judgment of the military regarding the confinement of wartime detainees.

A.    **Whether Wartime Detainees of the Military Can Assert Claims Challenging
Their Conditions of Confinement and What Standard Would Govern Such
Claims, if Permitted, are Unsettled Questions.**

Neither Judge Leon in <u>Khalid</u> nor Judge Green in <u>In re Guantanamo Detainee Cases</u>

directly addressed conditions of confinement claims asserted by detainees or decided what legal

standard should govern them.  In fact, because no court has ever determined that detainees of the

military can even bring conditions of confinement claims, no court has determined what legal

standard should be applied to evaluate such claims brought by detainees in the custody of the

military.  <u>See</u> <u>O.K. v. Bush</u>, 377 F. Supp. 2d 102, 112 n.10 (D.D.C. 2005) ("No federal court has

ever examined the nature of the substantive due process rights of a prisoner in a military

interrogation or prisoner of war context.").  The Supreme Court has explained that constitutional

challenges to conditions of confinement brought by convicted criminals are analyzed under the

Eighth Amendment's "deliberate indifference" standard, which requires a prisoner to establish

that prison officials "were knowingly and unreasonably disregarding an objectively intolerable

risk of harm to the prisoners' health or safety."[22]  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834-35, 846

(1994); <u>see also</u> <u>Ingram v. Wright</u>, 430 U.S. 651, 664 (1977) (holding that the Eighth

Amendment applies only to "those convicted of crimes").  In contrast, the constitutional standard

_____

[22] This standard is applicable both to claims alleging inadequate medical care as well as
challenges to general conditions of confinement, such as inadequate food, clothing, and cell
temperature.  <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 303 (1991) ("Whether one characterizes the
treatment received by the prisoner as inhumane conditions of confinement, failure to attend to
his medical needs, or a combination of both, it is appropriate to apply the 'deliberate
indifference' standard articulated in <u>Estelle [v. Gamble</u>, 429 U.S. 97 (1976)]").  The two-prong
deliberate indifference test requires the moving party to establish first that "the deprivation
alleged must be, objectively, sufficiently serious, . . . a prison official's act or omission must
result in the denial of the minimal civilized measure of life's necessities"; second, a prison
official must have a "sufficiently culpable state of mind" – "one of deliberate indifference to
inmate health or safety."  <u>Farmer</u>, 511 U.S. at 834 (internal quotations omitted).

of care owed to "pretrial detainees" in the criminal justice context – defined by the Supreme

Court as "those persons who have been charged with a crime but who have not yet been tried on

that charge" – is governed by the Due Process Clause of the Fifth Amendment.  Bell v. Wolfish,

441 U.S. 520, 523, 536 (1979).  "[W]here it is alleged that a pretrial detainee has been deprived

of liberty without due process, the dispositive inquiry is whether the challenged condition,

practice, or policy constitutes punishment, for under the Due Process Clause, a detainee must not

be punished prior to an adjudication of guilt in accordance with due process of law."[23]  Block v.

Rutherford, 468 U.S. 576, 583 (1984) (internal quotations omitted); see also Brogsdale v. Barry,

926 F.2d 1184, 1188 n.4 (D.C. Cir. 1991).

        Neither of these two standards, however, clearly applies to the Guantanamo detainees

and, in any event, would not provide petitioners with a likelihood of success on their claims.

Petitioners have not been convicted of any crime, thus they cannot rely on the Eighth

Amendment as a basis for their conditions of confinement claims.  See In re Guantanamo

Detainee Cases, 355 F. Supp. 2d at 465-78 (dismissing Eighth Amendment claims).  Similarly,

petitioners are not "pretrial detainees," as defined by the Supreme Court, because they have not

been charged with a crime, nor are they being detained as part of the criminal justice system.  Cf.

Hamdi v. Rumsfeld, 124 S. Ct. 2633, 2640 (2004) (plurality opinion) (detention of enemy

combatants is not punishment or penal in nature).  Furthermore, the criminal justice interests

---

        [23] Although the Supreme Court has never resolved the precise relationship between these
two tests, see City of Canton v. Harris, 489 U.S. 378, 389 n.8 (1989) (reserving "whether
something less than the Eighth Amendment's 'deliberate indifference' test may be applicable in
claims by [pretrial] detainees asserting violations of their due process right to medical care while
in custody"), the Court has explained that "the due process rights of a pretrial detainee are at
least as great as the Eighth Amendment protections available to a convicted prisoner."  County
of Sacramento v. Lewis, 523 U.S. 833, 849-50 (1998).

served by confining "pretrial detainees" are completely distinct from the military and national security interests served by detaining individuals, such as petitioners, in conjunction with ongoing hostilities.[24]  Compare Wolfish, 441 U.S. at 536-37 (criminal justice interest served by pretrial detention is to ensure detainees' presence at trial), with Hamdi, 124 S. Ct. at 2640 (2004) (plurality opinion) ("The capture and detention of lawful combatants and the capture, detention, and trial of unlawful combatants is to prevent captured individuals from returning to the field of battle and taking up arms once again.").  The uncertainty of the law in this area is illustrated by the fact that one Judge of this Court who has addressed the issue of a condition of confinement claim by a Guantanamo detainee reserved the question whether "the 'deliberate indifference' doctrine is the correct standard for any constitutional claims that petitioners might raise in this case." O.K. v. Bush, 344 F. Supp. 2d 44, 60-63 & n.23 (D.D.C. 2004) (Bates, J.) ("Without concluding that the 'deliberate indifference' doctrine applies" to challenges regarding inadequate medical care, "the Court will draw on this well-developed body of law to guide its analysis").  As explained below, petitioners cannot demonstrate a likelihood of success even under that standard in this context.

> **B.**    **Petitioners' Motion Does Not Justify Displacement of the Judgment of the Military Authorities at Guantanamo Regarding the General Manner in which They are Detained.**

Petitioners are asking the Court to second-guess the decisions of the military regarding their treatment and the general manner in which they are detained.  Even in the penal context,

---

[24]  Even in the cases of detainees who have been found to no longer be enemy combatants, their continued detention is not for any criminal justice purpose, but rather is an incident of war that is conducted on an interim basis as part of the military's necessary authority to wind up their detention in an orderly fashion while arrangements can be made for the proper resettlement or repatriation of such detainees.

however, prison administrators are entitled to great deference regarding the ways in which they

manage prisons and the means used to care for and detain prisoners.  The Supreme Court has

stated that the operation of even domestic "correctional facilities is peculiarly the province of the

Legislative and Executive Branches of our Government, not the Judicial," and has admonished

lower courts to avoid becoming "enmeshed in the minutiae of prison operations."  Bell v.

Wolfish, 441 U.S. 520, 548, 562 (1979).  Only upon a showing that prison conditions or care

sink to the level of "deliberate indifference" to an inmate's health or well-being is a court

justified in intervening in the treatment of inmates in the traditional penal prison setting.  See

Neitzke v. Williams, 490 U.S. 319, 321 (1989).[25]  Accordingly, the Supreme Court has directed

that prison administrators "should be accorded wide-ranging deference in the adoption and

execution of policies and practices that in their judgment are needed to preserve internal order

and discipline and to maintain institutional security."  Wolfish, 441 U.S. at 547; see also

---

[25] Petitioners' assertion that there is no legitimate penological interest to justify the
conditions at Guantanamo employs an inapplicable standard.  See Motion for Preliminary
Injunction at 40-42.  The Supreme Court has determined that when an actual prison regulation
has been alleged to violate the constitutional rights of prisoners, the appropriate inquiry is
whether the regulation that impinges on inmates' constitutional rights "is reasonably related to
legitimate penological interests."  Turner v. Safely, 482 U.S. 78, 89 (1987).  That inquiry is
applicable to actual regulations, not mere general conditions of confinement, and petitioners do
not point to a specific regulation that they challenge.  Additionally, this inquiry presumes that the
challenger possesses constitutional rights, and, as discussed, whether petitioners are entitled to
constitutional protections is an issue on appeal to the D.C. Circuit.  Moreover, as explained
above, petitioners are not being detained for criminal justice purposes, thus determining if there
is a legitimate "penological" interest for the regulation in question is not specifically applicable
to war-related detentions.  In any event, the Court in Turner acknowledged that "[r]unning a
prison is an inordinately difficult undertaking that requires expertise, planning, and the
commitment of resources, all of which are peculiarly within the province of the legislative and
executive branches of government.  Prison administration is, moreover, a task that has been
committed to the responsibility of those branches, and separation of powers concerns counsel a
policy of judicial restraint."  482 U.S. at 84-85.

Thornburgh v. Abbott, 490 U.S. 401, 408 (1989) ("Acknowledging the expertise of these

officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of

prison management, this Court has afforded considerable deference to the determinations of

prison administrators who, in the interest of security, regulate the relations between prisoners

and the outside world.").  These same principles counsel the Court to decline petitioners' request

to entangle itself in unspecified ways[26] in the particulars of their treatment and the manner in

which they are confined at the Guantanamo detention center.  Indeed, in light of the fact that

---

[26] Petitioners' motion requests the vague relief of an order requiring respondents to
allegedly "cease all acts of torture and cruel, inhuman and degrading treatment of Petitioners"
and "mandating that Respondents treat Petitioners at least according to minimum acceptable
standards." Motion for Preliminary Injunction at 46.  These requests are far too general and
amorphous to be an appropriate remedy and fail to satisfy the specificity requirements for
injunctions.  See Fed. R. Civ. P. 65(d) (indicating that "[e]very order granting an injunction . . .
shall be specific in terms; [and] shall describe in reasonable detail . . . the act or acts sought to be
restrained . . . .").  The Supreme Court has explained that Rule 65(d)'s specificity requirement
"was designed to prevent uncertainty and confusion on the part of those faced with injunctive
orders, and to avoid the possible founding of a contempt citation on a decree too vague to be
understood." Schmidt v. Lessard, 414 U.S. 473, 476 (1974).  Here, petitioners seek such a vague
injunction.  It would be difficult to determine, for example, if the detainees were being treated
"according to minimum acceptable standards."  The relief petitioners request would not provide
respondents with sufficient notice as to what specific conduct is prohibited, leaving respondents
to guess as to the meaning of the vague injunction.  See Calvin Klein Cosmetics Corp. v.
Parfums de Coeur, Ltd., 824 F.2d 665, 669 (8th Cir. 1985) ("Broad language in an injunction
that essentially requires a party to obey the law in the future is not encouraged and may be struck
from an order for injunctive relief, for it is basic to the intent of Rule 65(d) that those against
whom an injunction is issued should receive fair and precisely drawn notice of what the
injunction actually prohibits.").

Moreover, such a broad standard would require the Court to delve into the day-to-day
workings of Guantanamo and regularly second-guess the military, which, as explained above, the
Supreme Court has instructed the Judiciary generally not to do.  See Inmates of Occoquan v.
Barry, 844 F.2d 828, 841 (D.C. Cir. 1988) ("But in carrying out their remedial task, courts are
not to be in the business of running prisons.  The cases make it plain that questions of prison
administration are to be left to the discretion of prison administrators.").  Accordingly, the
prospect of the Court being entangled, through an improper injunction, in the minutiae of the
Guantanamo detention operations indicates that it would not be appropriate to modify the stay to
address petitioners' conditions of confinement claims.

petitioners are challenging the practices of a military detention center during a time of war,

separation of powers principles may require satisfaction of an even more stringent standard

before judicial intervention is warranted than in the penal context.  See, e.g., Hamdi, 124 S. Ct.

at 2647 (2004) (plurality opinion) (stating that "[w]ithout doubt, our Constitution recognizes that

core strategic matters of warmaking belong in the hands of those who are best positioned and

most politically accountable for making them"); id. at 2640 (noting that capture and detention of

suspected combatants is an "important incident of war"); Ludecke v. Watkins, 335 U.S. 160, 170

(1948) (finding that determination of state of war and status of individual as enemy alien are

"matters of political judgment for which judges have neither technical competence nor official

responsibility"); cf. Hirota v. MacArthur, 338 U.S. 197, 215 (1949) (Douglas, J., concurring)

(stating that "the capture and control of those who were responsible for the Pearl Harbor incident

was a political question on which the President as Commander-in-Chief, and as spokesman for

the nation in foreign affairs, had the final say."); Khalid v. Bush, 355 F. Supp. 2d 311, 328

(D.D.C. 2005) (explaining that management of wartime detainees' confinement conditions is the

province of the Executive and Legislative branches, thus precluding judicial scrutiny of such

conditions).[27]  Petitioners, however, have not satisfied even the "deliberate indifference"

standard that would apply in the penal context.  The record demonstrates that petitioners are

detained in a manner in which they receive adequate food, shelter, water, hygiene opportunities,

and medical care.  See supra Section II.

Other Judges of this Court have rejected similar challenges by other Guantanamo

---

[27]  The court in Khalid also recognized that even if a detainee is the subject of
mistreatment, the authority to remedy such mistreatment "should remain with the military and
the military judicial process."  Khalid, 355 F. Supp. 2d at 324 n.18.

detainees to their conditions of confinement.  In <u>O.K. v. Bush</u>, 344 F. Supp. 2d 44, 60-63 (D.D.C. 2004), Judge Bates rejected a detainee's request for an order requiring an independent medical examination and production of medical records finding that petitioner had not alleged a substantive violation of a legal right and had not offered sufficient competent evidence of medical neglect.  Subsequently, in the same case, Judge Bates denied the detainee's request for a preliminary injunction against the alleged torture and other mistreatment of the detainee concluding that the detainee failed to make a sufficient showing of his alleged abuse and noting that the Court was "not equipped or authorized to assume the broader roles of a congressional oversight committee or a superintendent of the operations of a military base." <u>O.K. v. Bush</u>, 377 F. Supp. 2d 102, 114 (D.D.C. 2005).  Similarly, in <u>Paracha v. Bush</u>, Case No. 04-2022 (PLF), the Court denied petitioner's motion for a preliminary injunction which, in part, challenged his conditions of confinement.  <u>See</u> Memorandum Opinion and Order (dkt. no. 58) (June 16, 2005). The Court determined that petitioner had not set forth sufficient competent evidence of his alleged mistreatment to establish that he would suffer irreparable harm without an injunction. <u>See</u> <u>id.</u> at 3.  As discussed, petitioners in the present case have also failed to establish competent factual support for their complaints regarding their conditions of confinement.  Accordingly, petitioners' request for a preliminary injunction should be denied.

<u>**CONCLUSION**</u>

For the reasons stated above, respondents respectfully request that petitioners' Motion for Preliminary Injunction be denied in all respects.

Dated: September 9, 2005                    Respectfully submitted,

                                            PETER D. KEISLER
                                            Assistant Attorney General

                                            KENNETH L. WAINSTEIN
                                            United States Attorney

                                            DOUGLAS N. LETTER
                                            Terrorism Litigation Counsel

                                            ___/s/ Edward H. White_____
                                            JOSEPH H. HUNT (D.C. Bar No. 431134)
                                            VINCENT M. GARVEY (D.C. Bar No. 127191)
                                            TERRY M. HENRY
                                            JAMES J. SCHWARTZ
                                            PREEYA M. NORONHA
                                            ROBERT J. KATERBERG
                                            ANDREW I. WARDEN
                                            NICHOLAS J. PATTERSON
                                            EDWARD H. WHITE (D.C. Bar No. 468531)
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Ave., N.W.
                                            Washington, DC  20530
                                            Tel:  (202) 514-4107
                                            Fax:  (202) 616-8470

                                            Attorneys for Respondents